## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RONALD WAYNE NEALE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-915-SRF |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### MEMORANDUM OPINION[1]

Plaintiff Ronald Wayne Neale, Jr. ("Plaintiff") filed this action pursuant to 42 U.S.C. §

405(g) against the defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security

Administration ("Commissioner").  (D.I. 1)  Plaintiff seeks judicial review of the

Commissioner's final decision denying Plaintiff's claim for disability insurance benefits ("DIB")

under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401–433.  (*Id.*)  Currently before

the court are cross-motions for summary judgment filed by Plaintiff and the Commissioner.[2]

(D.I. 13; D.I. 18)  For the reasons set forth below, Plaintiff's motion for summary judgment is

DENIED and the Commissioner's cross-motion for summary judgment is GRANTED.

### I.      BACKGROUND

#### A.  Procedural History

Plaintiff filed an application for DIB on April 8, 2019, alleging disability due to back and

hip injury, depression, bipolar disorder, diabetes, arthritis, insomnia, ADHD, leg neuropathy,

---

[1] On June 22, 2022, the parties consented to the jurisdiction of the undersigned judicial officer to conduct all proceedings in this matter through final judgment, pursuant to 28 U.S.C. § 636(c). (D.I. 22)

[2] The briefing on the pending motions is found at D.I. 14, D.I. 19, and D.I. 20.

foot drop, and chronic pain syndrome as of March 25, 2019. (D.I. 9 at 75)  Plaintiff's claims

were denied initially and upon reconsideration. (*Id.* at 74-88)  At Plaintiff's request, an

administrative law judge ("ALJ") held a hearing on January 5, 2021. (*Id.* at 39-73)  The ALJ

issued an unfavorable decision on January 14, 2021, finding that the Plaintiff could perform a

reduced range of sedentary work. (*Id.* at 20-31)  The Appeals Council subsequently denied

Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision

of the Commissioner. (*Id.* at 5)

Plaintiff brought this civil action challenging the ALJ's decision on June 28, 2021. (D.I.

1)  Plaintiff filed the pending motion for summary judgment on February 18, 2022, and the

Commissioner cross-moved for summary judgment on April 29, 2022. (D.I. 13, 18)  The

motions are now ripe for resolution.

### B. Medical History

Plaintiff was 35 years old on his alleged disability onset date of March 25, 2019. (D.I. 9

at 75)  The ALJ found that the Plaintiff had the following severe impairments: degenerative disc

disease of the lumbar spine, osteoarthritis of the right hip, obesity, and bipolar disorder. (*Id.* at

22)  The court focuses its summary of the medical evidence on the records relevant to Plaintiff's

mental impairments, which are the subject of Plaintiff's appeal. (D.I. 14 at 14-18)

#### 1. Medical evidence

At the time of his disability onset date, Plaintiff was a participant in a mental health and

substance abuse treatment program at the Wilmington VA Medical Center, and he had recently

experienced a relapse. (D.I. 9 at 410, 433-34)  Treatment notes indicate that he was motivated to

overcome his opioid addiction and had a strong support network of family and friends, but he

2

experienced symptoms of mild depression and exhibited impulsive behavior. (*Id.* at 433-34) He began taking Suboxone. (*Id.* at 434)

Three months later, Plaintiff reported to psychiatrist Daniel Lache, M.D. that his transition from pain medication to Suboxone caused him to feel better and reduced his emotional problems. (*Id.* at 605) Although the subjective portion of Plaintiff's treatment record suggests he experienced memory problems, he achieved a normal score on the Montreal Cognitive Assessment used to determine memory loss or cognitive impairment.[3] (*Id.* at 605-07, 634)

A random drug screening in February 2020 was positive for cannabinoid, cocaine, and Suboxone. (*Id.* at 736) In June of that year, Plaintiff told Dr. Lache that he had relapsed and was using fentanyl daily. (*Id.* at 916) Although Plaintiff reported that he stopped using the previous week, he still experienced pain and cravings and requested a referral to rehabilitation. (*Id.*) Plaintiff's wife subsequently reported that Plaintiff was noncompliant with his medication and exhibited erratic behavior, prompting a wellness check by police. (*Id.*) The following month, Plaintiff left his inpatient treatment clinic before his discharge was complete. (*Id.* at 915) Efforts to follow up with Plaintiff for wellness checks went unanswered. (*Id.* at 914-15)

Plaintiff missed an appointment with Dr. Lache in August 2020, and Dr. Lache recommended acute intervention by a suicide prevention coordinator. (*Id.* at 907) The following week, Plaintiff attended a primary care visit and had negative screens for depression and risk of suicide. (*Id.* at 898-900)

Plaintiff exhibited a good mood in a visit with Dr. Lache on October 1, 2020. (*Id.* at 886) Although he was recovering from his separation with his wife, Plaintiff reported that he had been going to meetings and spending time with his children and a good friend. (*Id.*) Plaintiff denied

---

[3] *See* https://www.mocatest.org/.

using opioids since his visit in June, and Dr. Lache observed that Plaintiff exhibited good judgment, a logical thought process, and intact impulse control. (*Id.* at 887)

### 2.  Opinions of State agency consultants

On April 6, 2020, Dr. Christopher King, Psy.D reviewed Plaintiff's mental health treatment records and opined that Plaintiff had no limitations in his memory, mild limitations in his ability to concentrate and manage himself, and moderate limitations in his ability to interact with others. (D.I. 9 at 78)  Dr. King found Plaintiff's stated limitations to be partially consistent with the medical evidence of record. (*Id.*)  Dr. King acknowledged Plaintiff's history of recurrent substance abuse, noncompliance with treatment, and interpersonal difficulties, but he opined that Plaintiff could manage his daily activities independently and had normal mentation when he is sober and compliant with his medication. (*Id.* at 78-79)   Dr. Jane Curran, Ph.D affirmed Dr. King's findings on reconsideration, stating that updated records reflected no change in Plaintiff's mental condition since Dr. King's initial review, and recent reduced functioning was attributable to Plaintiff's drug use. (*Id.* at 86)

### C.  Hearing Before the ALJ

#### 1.  Plaintiff's testimony

At the hearing before the ALJ on January 5, 2021, Plaintiff testified that he lived with his ex-wife and their five children and had prior work experience as an aviation mechanic. (D.I. 9 at 47, 49, 53)  He began to have problems at work following a 2016 auto accident, which caused him to suffer chronic physical pain and resulted in an opioid addiction. (*Id.* at 47, 53) Specifically, Plaintiff testified that his manic and depressive behavior, difficulty concentrating, and explosive, irritable mood were contributing factors in his decision to stop working in 2019. (*Id.* at 48-49)

4

With respect to activities of daily living, Plaintiff testified that he is unable to do household chores or concentrate long enough to help his children with virtual school. (*Id.* at 50) Plaintiff also testified that he has incurred a significant amount of debt because of his manic behavior. (*Id.* at 51, 53) Plaintiff reported that he has been clean from opiates since his last surgery in 2019, but his mental health has not improved since he stopped taking opiates. (*Id.* at 53)

### 2. Third party testimony

Plaintiff's ex-wife testified that she and Plaintiff recently divorced due to his mental instability. (*Id.* at 55-56) Despite their divorce, Ms. Neale explained they continue to live together because Plaintiff's physical impairments and memory lapses prevent him from living independently. (*Id.* at 57) She testified that Plaintiff has a strained relationship with his children. (*Id.* at 58-59)

### 3. Vocational Expert's testimony

The ALJ posed the following hypothetical to the vocational expert ("VE"):

> So, we'll assume a hypothetical individual that could occasionally lift 20 pounds, frequently lift 10 pounds. Could stand and/or walk two hours out of an eight-hour workday. Could sit six hours out of any eight-hour workday. This individual would need a cane to ambulate. Could occasionally climb ramps and stairs. Could [n]ever climb ladders, ropes or scaffolds. Could occasionally balance, stoop, kneel, crouch and crawl. Can tolerate frequent exposures to vibration and hazards. Can occasionally interact with co-workers and supervisors and can tolerate occasional changes in the workplace. Could this — is there any work for this hypothetical individual?

(D.I. 9 at 68) The VE testified that such a hypothetical individual would not be able to perform Plaintiff's past work as an aviation mechanic. (*Id.* at 68) However, the VE indicated that such a hypothetical individual could perform at the sedentary exertion level as an order clerk, telephone information person, or a sorter. (*Id.* at 69-70)

In response to questioning by Plaintiff's counsel, the VE testified the hypothetical individual would be precluded from all work if he could not sit for at least six hours and stand and walk for at least two hours of a normal workday.  (*Id.* at 71)  The VE also confirmed that the jobs of order clerk and telephone information person would involve frequent communication with the public.  (*Id.* at 72)

### D.  The ALJ's Findings

Based on the medical evidence in the record and the testimony by Plaintiff and the VE, the ALJ determined that Plaintiff was not disabled under the Act for the relevant time period from the March 25, 2019 disability onset date through the date of the ALJ's written decision on January 14, 2021.  (*Id.* at 21)  The ALJ found, in pertinent part:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since March 25, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of lumbar spine; osteoarthritis of right hip; obesity; and bipolar disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for a total of 2 hours in an 8-hour workday; sit for a total of 6 hours in an 8-hour workday; needs a cane to ambulate; can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; can tolerate frequent exposure to vibration and hazards; can occasionally interact with co-workers and supervisors; and can tolerate occasional changes in the workplace.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant . . . was 36 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a limited education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 25, 2019, through the date of this decision (20 CFR 404.1520(g)).

(*Id.* at 22-31)

## II.   STANDARD OF REVIEW

Judicial review of the ALJ's decision is limited to determining whether substantial evidence supports the decision. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence means enough relevant evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x 684, 687 (3d Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). When applying the substantial evidence standard, the court "looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek*, 139 S. Ct. at 1154 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The threshold for satisfying the substantial evidence standard is "not high[,]" requiring "more than a mere scintilla" of evidence. *Id.*

## III.   DISCUSSION

### A. Disability Determination Process

Title II of the Social Security Act "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  A disability is defined for purposes of DIB as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A claimant is only disabled if the impairments are so severe, they preclude a return to previous work or engagement in any other kind of substantial gainful work existing in the national economy.  *Id.* at § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

The Commissioner must perform a five-step analysis to determine whether a person is disabled.  *See* 20 C.F.R. § 404.1520; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999).  If the Commissioner makes a finding of disability or non-disability at any point in the sequential process, the Commissioner will not review the claim further.  20 C.F.R. § 404.1520(a)(4).  At step one, the Commissioner determines whether the claimant is engaged in any substantial gainful activity.  *See id.* at § 404.1520(a)(4)(i).  If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a severe combination of impairments.  *See id.* at § 404.1520(a)(4)(ii).

If the claimant's impairments are severe, at step three, the Commissioner compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any

8

gainful work. *See id*. at § 404.1520(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's impairment or its equivalent matches a listed impairment, the claimant is presumed disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See id*. at § 404.1520(e).

At step four, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to perform past relevant work. *See id*. at § 404.1520(a)(4)(iv); *Plummer*, 186 F.3d at 428. A claimant's RFC "measures the most she can do despite her limitations." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (quoting 20 C.F.R. § 404.1545(a)(1)) (internal quotations and alterations omitted). The claimant bears the burden of demonstrating the inability to return to past relevant work. *See Plummer*, 186 F.3d at 428.

If the claimant is unable to return to past relevant work, at step five, the Commissioner must demonstrate that the claimant's impairments do not preclude an adjustment to any other available work. *See* 20 C.F.R. § 404.1520(g); *Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. *See id*. To make this determination the ALJ often seeks the VE's assistance in making this finding. *See id*.

### B. Whether the ALJ's Decision is Supported by Substantial Evidence

Plaintiff challenges the ALJ's decision in multiple respects: (1) the ALJ failed to address the objections raised by Plaintiff in his post-hearing brief; (2) the ALJ substituted his own lay

9

judgment over that of Plaintiff's mental health providers; (3) the ALJ failed to account for Plaintiff's moderate limitation in his ability to concentrate, persist and maintain pace; (4) the ALJ failed to resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT"); (5) the Commissioner's appointment violated the separation of powers; and (6) the ALJ and Appeals Council judges were not properly appointed.  (D.I. 14 at 1-2)

### 1. Post-hearing objections to VE's testimony

Plaintiff claims the ALJ violated the Hearings, Appeals and Litigation Law Manual ("HALLEX") by failing to address objections to the VE's testimony raised by Plaintiff's counsel in a post-hearing letter brief.  (D.I. 14 at 9; D.I. 20 at 1)  But the HALLEX provision cited by Plaintiff provides that the ALJ must rule on any objections to the VE's testimony which are raised during the hearing before the ALJ.  HALLEX I-2-6-74B.  Its guidance does not extend to objections to the VE's testimony raised in post-hearing submissions. *Id.*; *see also Carolyn C. v. Kijakazi*, 2021 WL 4932785, at *15 (D.N.J. Oct. 22, 2021) ("[A] failure to challenge a vocational expert's testimony at the hearing waives Plaintiff's right to later object to that testimony.").  Moreover, Plaintiff's argument ignores the Third Circuit's admonition that "HALLEX provisions . . . lack the force of law and create no judicially-enforceable rights." *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 859 (3d Cir. 2007).  Consequently, the ALJ's failure to address Plaintiff's post-hearing objections to the VE's testimony is not a basis for remand.

### 2. Assessment of medical opinion evidence

Plaintiff argues the ALJ erred by disregarding the opinions of two state agency physicians who suggested Plaintiff was limited in his ability to interact with the public and basing his mental RFC assessment on his own lay judgment.  (D.I. 14 at 6-7)  But the

Commissioner counters that the state agency consultants did not have the benefit of Plaintiff's medical records after June 2020, and the ALJ properly exercised his authority to make a mental RFC finding based on all the relevant evidence. (D.I. 19 at 8-9)

The ALJ did not err in his evaluation of the medical opinion evidence, and his mental RFC assessment is supported by substantial evidence. Although the ALJ found the opinions of Drs. King and Curran largely persuasive, he explained that their findings of moderate limitations in Plaintiff's ability to interact with the public were not supported by the medical records or testimony. (D.I. 9 at 29) This finding is supported by therapist notes from February 2019 describing an isolated conflict between Plaintiff and coworkers or supervisors,[4] without suggesting those difficulties extended to Plaintiff's interactions with the general public. (*Id.* at 436) Consistent with more recent records post-dating the state agency opinions, the ALJ explained that Plaintiff's ability to regularly attend meetings and spend time with a good friend supports a conclusion that Plaintiff is not limited in his interactions with the public. (*Id.* at 29, 886) The ALJ's opinion was therefore based on evidence in the record, as opposed to lay speculation. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011) ("[T]he ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision."); *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC. Surveying the medical evidence to craft an RFC is part of the ALJ's duties.").

---

[4] The ALJ accounted for Plaintiff's difficulties in getting along with coworkers and supervisors by limiting Plaintiff "to occasional interaction with coworkers and supervisors." (D.I. 9 at 29)

11

### 3. Sufficiency of mental RFC assessment

Plaintiff contends that remand is required because the ALJ found Plaintiff had a moderate limitation in concentration, persistence, and pace, but then failed to account for that limitation in his RFC assessment. (D.I. 14 at 10)  The Commissioner responds that the ALJ properly accounted for Plaintiff's moderate limitation by limiting him to occasional interaction with coworkers and supervisors and occasional changes in the workplace. (D.I. 19 at 12)

After determining that Plaintiff had a moderate limitation in his ability to concentrate, persist, or maintain pace, the ALJ was obligated to account for the impairment by including specific corresponding limitations in the hypothetical and the RFC assessment. (D.I. 9 at 23-24); *see Ramirez v. Barnhart*, 372 F.3d 546, 552-54 (3d Cir. 2004).  The ALJ satisfied this obligation by finding that Plaintiff "can only tolerate occasional changes in the workplace" and restricting Plaintiff to only occasional interaction with coworkers and supervisors. (D.I. 9 at 29)  Nearly identical RFC limitations have been deemed sufficient to account for moderate limitations in concentration, persistence, and pace in cases within the Third Circuit. *See, e.g.*, *Garner v. Berryhill*, 2017 WL 2544589, at *1 n.1 (E.D. Pa. June 13, 2017) (limiting the claimant to "simple, routine tasks involving no more than simple, short instructions and simple work-related decisions with few workplace changes, and only occasional interaction with the general public and coworkers" was sufficient to account for moderate difficulties in maintaining concentration, persistence, and pace).  Because the ALJ's mental RFC assessment is not deficient in this regard, remand is not warranted. *See McDonald v. Astrue*, 293 F. App'x 941, 946-47 (3d Cir. 2008).

The Third Circuit has explained that the focus of the court's inquiry must be on whether the ALJ offered a "valid explanation" for the limitations imposed to account for moderate difficulties in concentration, persistence, and pace. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198,

211-13 (3d Cir. 2019) (finding limitation to "simple tasks" to be sufficient to account for deficiencies in concentration, persistence, or pace on the facts of the case); *Holley v. Comm'r of Soc. Sec.*, 590 F. App'x 167, 168 (3d Cir. 2014) (weighing "how well the ALJ studied the record, and how thoroughly he understood [the claimant's] specific impairments," as opposed to scrutinizing the precise language used in the hypothetical or the RFC assessment).  The ALJ did so in this case by explaining that "treatment records do not observe difficulty with attention or concentration," but nonetheless considering "the impact of mood swings on the ability to concentrate, persist, or maintain pace[.]"  (D.I. 9 at 24, 29)  The ALJ considered records showing Plaintiff's mood, insight, judgment, and impulse control were good, cognitive findings were normal, and Plaintiff's symptoms improved when he was compliant with his medication and did not abuse drugs.  (*Id.* at 27-28)  On this record, the ALJ's hypothetical and RFC analysis limiting Plaintiff to occasional changes in the workplace and occasional interaction with coworkers and supervisors is supported by substantial evidence and adequately accounts for Plaintiff's moderate limitations in concentration, persistence, and pace.  *See Hess*, 931 F.3d 213-14.

### 4.  Conflict between VE testimony and DOT

Plaintiff next argues that the ALJ erred by failing to acknowledge and resolve apparent conflicts between the VE's testimony and the DOT.  (D.I. 14 at 13)  According to Plaintiff, the ALJ's RFC limiting Plaintiff to "occasionally interact[ing] with co-workers and supervisors" conflicts with the VE's proposal of the Order Clerk and Telephone Information Person positions because the DOT specifies those positions require significant communications with others.  (*Id.* at 14-15)  Plaintiff also contends that the limitation to no more than "occasional changes in the work setting" conflicts with the DOT requirements to "apply commonsense understanding to

carry out instructions furnished in written, oral, or diagrammatic form" and "deal with problems involving several concrete variables." (*Id.* at 15)

The Commissioner counters that Plaintiff's arguments are based on lay speculation that someone with Plaintiff's limitations could not perform the jobs identified by the VE. (D.I. 19 at 13-14) The Commissioner stresses that the ALJ did not limit Plaintiff's interactions with the public in his RFC analysis, and the VE's conclusion that a person with Plaintiff's limitations could perform the jobs of Order Clerk, Telephone Information Person, and Sorter provides substantial evidence in support of the ALJ's decision. (*Id.* at 14-15)

Substantial evidence supports the ALJ's determination that Plaintiff retains the capacity to perform the jobs of Order Clerk and Telephone Information Person. (D.I. 9 at 30-31) In accordance with the DOT description, an Order Clerk must take orders over a telephone or intercom system, suggest menu items and substitutions, and answer questions regarding food or service. DOT § 209.567-014, 1991 WL 671794. The DOT states that the position of Telephone Information Person similarly requires an individual to answer telephone calls from customers requesting current stock quotations and provide information posted on electronic quote boards. DOT § 237.367-046, 1991 WL 672194. Although it is generally agreed that these positions require more than occasional interaction with the public, the ALJ's RFC analysis did not limit Plaintiff's interactions with the public. *See* § III.B.2, *supra*; *see Hughes v. Kijakazi*, 2022 WL 1256704, at *18 (E.D. La. Mar. 9, 2022), *report and recommendation adopted*, 2022 WL 1238628 (E.D. La. Apr. 26, 2022) (finding DOT description indicates that public interaction is an essential component of the Order Clerk and Telephone Quotation clerk positions); *Halde v. Saul*, 2020 WL 4470445, at *6 (D. Nev. Aug. 3, 2020) (remanding for clarification of whether

claimant's limitation to occasional interaction with the public includes interaction by telephone to resolve apparent conflicts between DOT and VE testimony on position of Order Clerk).

Plaintiff has not cited any evidence to suggest that the RFC limitations on his ability to interact with coworkers and supervisors give rise to a conflict between the VE's testimony and the DOT description of the Order Clerk and Telephone Information Person positions. The DOT descriptions indicate that most of the required interaction occurs with customers, as opposed to coworkers. *See* DOT § 209.567-014, 1991 WL 671794; DOT § 237.367-046, 1991 WL 672194; *see also Near v. Berryhill*, 2018 WL 10229503, at *4 (C.D. Ill. Mar. 13, 2018) (concluding that claimant's limitation to occasional interactions with coworkers did not lead to an inference of limitations on interactions with the public that would preclude work as an Order Clerk). The VE testified that an individual limited to only occasional interaction with coworkers and supervisors could perform the jobs of Order Clerk and Telephone Information Person and expressly confirmed to the ALJ that his testimony was consistent with the DOT in accordance with Social Security Ruling 00-4p. (D.I. 9 at 69-70); SSR 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000).

Plaintiff also suggests that the positions of Order Clerk and Telephone Information are incompatible with his RFC assessment because he is limited to no more than "occasional changes in the work setting," whereas both positions identified by the VE require an individual to "apply commonsense understanding to carry out instructions . . . and deal with problems involving several concrete variables in or from standardized situations." (D.I. 14 at 15) The Third Circuit rejected a similar argument in *Zirnsak v. Colvin*, 77 F.3d 607, 618-19 (3d Cir. 2014), concluding that there was no obvious conflict between the jobs of Order Clerk and Telephone Information Person, which require level 3 reasoning, and a finding that a claimant

15

should be limited to simple and routine work.  As in *Zirnsak*, Plaintiff cites no evidence or authority suggesting he is incapable of performing these jobs, and Plaintiff's counsel did not identify this or any other inconsistency between the VE's testimony and the DOT at the hearing before the ALJ.  *Id.*  Because there is no established inconsistency between the VE testimony and the DOT descriptions for the Order Clerk and Telephone Information Person positions, substantial evidence supports the ALJ's decision at step 5 of the analysis.

With respect to the position of Sorter, Plaintiff argues that the DOT description conflicts with the ALJ's limitation to no more than frequent exposure to vibrations and hazards because it requires working on conveyor belts all day.  (D.I. 14 at 15)  Having determined that substantial evidence supports the ALJ's step 5 decision regarding the positions of Order Clerk and Telephone Information Person, the court need not reach the issue of whether a conflict exists between the VE's testimony and the DOT requirements for the third position of Sorter.  *See* 20 C.F.R. § 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications."); *Zirnsak v. Colvin*, 777 F.3d 607, 619-20 (3d Cir. 2014) (concluding that failure to explain alleged discrepancy between VE testimony and DOT description was not sufficient to warrant remand where evidence existed of other jobs the claimant could perform).

### 5.  Adequacy of Commissioner's appointment

Plaintiff contends that the ALJ's decision is constitutionally defective because the appointment of the former Commissioner, Andrew Saul, violated the Appointments Clause of the Constitution.  (D.I. 14 at 17-19)  Specifically, Plaintiff argues that 42 U.S.C. § 902(a)(3) presents

an unconstitutional violation of the separation of powers by limiting the President's authority to remove the Commissioner without cause. (*Id.*)

The Commissioner concedes that 42 U.S.C. § 902(a)(3) violates the separation of powers. (D.I. 19 at 29)  Nonetheless, the Commissioner argues that the ALJ's unfavorable decision in this case should not be set aside because Plaintiff has not shown that the unconstitutional statutory removal restriction caused him to suffer compensable harm. (*Id.* at 30)

Plaintiff's request for a *de novo* hearing before a new, properly appointed ALJ is denied. The Supreme Court has explained that "the unlawfulness of the removal provision does not strip the [Commissioner] of the power to undertake the other responsibilities of his office[.]" *Collins v. Yellen*, 141 S. Ct. 1761, 1788 n.23 (2021) (citing *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2207-11 (2020)).  Accordingly, "plaintiffs alleging a removal violation are entitled to injunctive relief—a rewinding of agency action—only when the President's inability to fire an agency head affected the complained-of decision." *Id.* at 1801 (Kagan, J., concurring).  Plaintiff does not articulate how the President's inability to remove the Commissioner without cause affected the ALJ's disability determination in this case. *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021) ("[T]here is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions.  And nothing commands us to vacate the decisions below on that ground.").  Absent a showing of compensable harm caused by the removal restriction, Plaintiff cannot prevail on this issue.

### 6.  Adequacy of appointments of ALJ and Appeals Council judges

Plaintiff alleges that the ALJ and Appeals Council judge who adjudicated Plaintiff's disability claim were not properly appointed under the Constitution because the term of former Acting Commissioner Nancy Berryhill exceeded the statutory limit under the Federal Vacancies

Reform Act ("FVRA").  (D.I. 14 at 20)  In response, the Commissioner contends that an acting official serving under the FVRA may continue to serve during the pendency of a first or second nomination, even if the nomination was submitted after the initial statutory period for acting service expires.  (D.I. 19 at 18-19)

Former Acting Commissioner Berryhill's acting service did not violate the term limits set forth in 5 U.S.C. § 3346(a) when she ratified the appointments of the ALJs and Appeals Council judges in July 2018, during the pendency of Andrew Saul's nomination.  The statute provides that "the person serving as an acting officer as described under section 3345 may serve in the office—(1) for no longer than 210 days beginning on the date the vacancy occurs; or (2) . . . once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate."  5 U.S.C. § 3346(a).

It is undisputed that Berryhill held the position of Acting Commissioner for more than 210 days at the time Andrew Saul was nominated as Commissioner in April 2018.  However, a majority of courts have held that "§ 3346(a)(2) 'contains a "spring-back" provision that enabled [Berryhill] to resume her role as Acting Commissioner as of the date that Andrew Saul was nominated for Commissioner in April 2018.'"  *Bauer v. Kijakazi*, 2022 WL 2918917, at *4 (N.D. Iowa July 25, 2022) (quoting *Williams v. Kijakazi*, 2022 WL 2163008, at *3 & n.3 (W.D.N.C. June 15, 2022)).  These courts reject the minority view that subsections (1) and (2) are mutually exclusive, and acting service must end upon the expiration of the initial 210-day time limit if a nomination has not occurred before that time.  *Cf. Brian T.D. v. Kijakazi*, 2022 WL 179540 (D. Minn. Jan. 20, 2022); *Richard J.M. v. Kijakazi*, 2022 WL 959914 (D. Minn. Mar. 30, 2022). Instead, the majority of courts interprets § 3346(a) to govern when an officer "may serve," as opposed to dictating when that service must end, because nothing in the statute conditions acting

service on the submission of a nomination within 210 days. *See Bauer*, 2022 WL 2918917, at

*7; *Williams*, 2022 WL 2163008, at *3. Consequently, Berryhill's acting service was valid

under the FVRA when she ratified the appointments of the ALJs and Appeals Council judges in

July 2018, during the pendency of Andrew Saul's nomination. *See* SSR 19-1p, 2019 WL

1324866, at *2 (S.S.A. Mar. 15, 2019) ("[O]n July 16, 2018 the Acting Commissioner of Social

Security ratified the appointments of our ALJs and approved those appointments as her own.").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED (D.I.

13), and the Commissioner's cross-motion for summary judgment is GRANTED (D.I. 18). An

Order consistent with this Memorandum Opinion shall issue.

Dated:  October 7 , 2022

Sherry R. Fallon
United States Magistrate Judge